**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnathon Cross, | No. CV-20-00423-TUC-RM (MSA) |
| Plaintiff, | **ORDER** |
| v. | |
| Candlewic, | |
| Defendant. | |

Pending before the Court are three Motions in Limine: (1) Defendant Candlewic's Motion in Limine No. 1 (Doc. 91); (2) Plaintiff Johnathon Cross's Motion in Limine No. 2 (Doc. 96); and (3) Plaintiff's Motion in Limine No. 4 (Doc. 98). Also pending are Plaintiff's *Daubert* Motion regarding Rob Harrington, PhD (Doc. 92), to which Defendant responded in opposition (Doc. 109), and Plaintiff's *Daubert* Motion regarding Kelly Wouters, PhD (Doc. 94), to which Defendant responded in opposition (Doc. 110). The Court held an evidentiary hearing pursuant to *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), on May 2, 2023. (Doc. 118.)

## I.    Background

Plaintiff Johnathon Cross sustained serious and permanent injuries when he attempted to put out a candle that had become "engulfed in flames approximately two feet high." (Doc. 39 at 3.) Plaintiff purchased the candle from a candle store, Empressive Candles LLC, owned by Eldogina Crawford. (Doc. 39 at 2; Doc. 80 at 1.) Crawford made the candle using gel, fragrance, and glitter. (Doc. 80 at 1.) Plaintiff alleges Crawford

purchased the fragrance, Amber Sunset, from Defendant Candlewic, also known as Binder Industries, Inc. (Doc. 39 at 7; Doc. 80 at 1.)[1] In the remaining claim in this case, Plaintiff alleges that the Amber Sunset fragrance had an informational defect for which Defendant Candlewic is strictly liable.[2] (Doc. 39 at 7-9; Doc. 80 at 1-2.) Plaintiff's position that the fragrance caused the flashover is based on the expert opinion of David Komm ("Komm"), a licensed mechanical engineer and certified fire investigator with over 20 years of experience in forensic engineering. (*See* Doc. 76-2 at 2.)

Defendant Candlewic moved for summary judgment, arguing that Komm's opinions were speculative, and thus inadmissible, and there was no evidence that the Amber Sunset fragrance caused the flashover. (Doc. 75.) The Court found that (1) Komm's testimony was based on sufficient facts and data; (2) the evidence that Komm relied on (i.e., the tests he performed using the same supplies and components as the subject candle) was circumstantial but adequately supported Komm's opinions; (3) Komm's opinions, including his opinion that Crawford probably used too much Amber Sunset fragrance, was not speculative but was based on inferences he drew based on data he gathered; (4) a jury could reasonably rely on that inference to reject Crawford's testimony that she used an appropriate amount of fragrance; and (5) given Amber Sunset's polarity and low flashpoint, a jury could conclude that the fragrance caused the flashover even if the amount of fragrance was not excessive, or could conclude that the amount of fragrance was excessive. (Docs. 80, 84.)[3] The Court concluded that Plaintiff had presented enough evidence—namely, that the Amber Sunset fragrance may have caused the candle to burst into flames, and that Crawford would not have used the fragrance had an accurate warning been provided—that a jury could find that Defendant's

---

[1] Plaintiff voluntarily dismissed former Defendants Virginia Candle Supply, LLC, without prejudice (Doc. 41) and Empressive Candles, LLC, with prejudice (Doc. 120).

[2] This claim has three elements: the "product is defective and unreasonably dangerous, the defect existed at the time it left defendant's control, and the defect is a proximate cause of plaintiff's injury or property loss." *Menendez v. Paddock Pool Constr. Co.*, 836 P.2d 968, 971 (Ariz. Ct. App. 1991) (citing *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*, 640 P.2d 851, 854 (Ariz. 1982)).

[3] The Court granted summary judgment as to Plaintiff's claim that Defendant is jointly and severally liable. (Docs. 80, 84.)

failure to warn proximately caused Plaintiff's injuries. (Docs. 80, 84.) Accordingly, Plaintiff's strict liability claim against Defendant Candlewic remains for trial.

The parties filed their Joint Proposed Pretrial Order on September 30, 2022 (Doc. 88), and a firm jury trial is set for September 18, 2023 (Doc. 112). At a pretrial conference held on November 21, 2022, the Court granted Plaintiff's Motions in Limine Nos. 1 (Doc. 95), 3 (Doc. 97), 5 (Doc. 99), and 6 (Doc. 100). (Doc. 112.) The Court took the remaining Motions in Limine under advisement. (*Id.*)

## II.     Defendant's Motion in Limine No. 1 (Doc. 91)

Defendant's Motion in Limine No. 1 requests that Komm be precluded from testifying to causation and that his testimony be limited to the disclosed opinions and reports. (Doc. 91.) Defendant argues that Komm has not produced or opined on facts demonstrating that Amber Sunset caused the candle to burst into flames, thereby causing Plaintiff's injury. (*Id*. at 3.) Rather, Defendant contends, Komm's opinion was that the "concentration of fragrance in the candle" caused the combustion and that the "pockets of concentrated fragrance were capable of flashover." (*Id*.) Defendant avers that this opinion is unsupported because (1) Komm does not know which fragrance was used in the candle or the amount of fragrance contained in concentrated pockets; and (2) Komm did not test the amount or concentration of fragrance in the candle. (*Id*.) Defendant further contends that Plaintiff's testing data showed that the fragrance load had to be between 30 and 50 percent to create the possibility for surface ignition, but that even this fact does not establish that the fragrance itself caused the combustion. (*Id*.)

Plaintiff opposes the Motion. (Doc. 106.) Plaintiff notes first that the Court already rejected Defendant's arguments regarding the admissibility of Komm's proposed testimony and found that Komm's testimony was admissible. (*Id*.; *see also* Doc. 80.) Plaintiff argues that Defendant should be precluded from attempting to argue issues that were already decided on summary judgment. (Doc. 106.) Plaintiff also argues that Defendant's assertion that Komm did not know if the Amber Sunset fragrance was used in the candle is disingenuous, as Defendant already admitted in its Statement of Facts in

- 3 -

1   Support of its Motion for Summary Judgment that Crawford used the Amber Sunset

2   fragrance and purchased it from Defendant. (*Id.*; *see also* Doc. 76 at ¶ 3.)

3          The Court will deny Defendant's Motion in Limine No. 1 for three reasons. First,

4   there is no real dispute that Amber Sunset was used in the candle. In Defendant's own

5   Statement of Facts in Support of its Motion for Summary Judgment, Defendant stated,

6   "[i]n making the subject candle, Eldogina Crawford, the owner, used a fragrance called

7   Amber Sunset, which she purchased from Candlewic." (Doc. 76 at ¶ 3.) Defendant also

8   stated in its Motion for Summary Judgment that Crawford "used a fragrance called

9   Amber Sunset." (Doc. 75 at 2.)

10          Next, to the extent Defendant is arguing that Komm's causation testimony is

11   inadmissible because Komm failed to measure the amount of fragrance in the subject

12   candle, that argument was resolved in Plaintiff's favor in Magistrate Judge Aguilera's

13   Report and Recommendation (Doc. 80), which this Court accepted and adopted in full

14   (Doc. 84). The Report and Recommendation specifically found that Komm's opinions

15   about the amount of fragrance were not assumptions, but rather inferences "based on data

16   gathered during his investigation." (Doc. 80 at 6.)

17          Finally, the Court previously concluded that Komm's testimony was relevant and

18   admissible as to causation. (*Id.* at 6-7; *see also* Doc. 84.) Komm's Report concluded that

19   "[t]he cause of the rapid increase in the candle combustion was the concentration of

20   fragrance in the candle." (Doc. 93-1 at 35.) Magistrate Judge Aguilera's Report and

21   Recommendation found that Komm's testimony supported the theory that "the Amber

22   Sunset fragrance caused the candle to burst into flames." (Doc. 80 at 7.) It further found

23   that a "reasonable jury could rely on this evidence to find that Defendant's failure to warn

24   proximately caused Plaintiff's injuries." (*Id.*) Therefore, Komm may testify as to

25   causation, consistent with his disclosed opinions and Report. Defendant's Motion in

26   Limine No. 1 is denied.

27   . . . .

28

**III.     Plaintiff's Motion in Limine No. 2 (Doc. 96)**[4]

In his Motion in Limine No. 2, Plaintiff requests that the Court preclude Defendant from suggesting that former Defendant Virginia Candle Supply ("VCS") is at fault. (Doc. 96.) Plaintiff avers that VCS was named early in the lawsuit as the supplier of the gel used in the candle, but it was determined that the gel did not cause the fire, and the claims against VCS were accordingly dismissed on May 19, 2021. (*See* Doc. 41.) On December 14, 2021, Defendant filed a Notice of Intent to Allege Fault of Empressive Candles, LLC[5] and VCS at Trial. (Doc. 72.) Plaintiff contends that Defendant has not produced or identified any evidence that VCS could be at fault. (Doc. 96.)

Defendant responded in opposition to the Motion. (Doc. 107.) Defendant argues that Plaintiff's statement that the gel did not cause the fire is false, and that the stipulation of dismissal of VCS was not a factual determination that the gel did not cause the fire. (Doc. 107.) Defendant contends, rather, that evidence does exist to suspect that the gel caused the fire. (*Id*.)

Defendant attaches to its response deposition testimony by Lisa Thomas, Plaintiff's mother, stating that Crawford told her that (1) there was too much fragrance in the candle gel; (2) Crawford had been burned by the gel in the past; (3) the excessive fragrance in the gel could have caused it to catch fire; (4) Crawford had previously communicated with the gel manufacturer that she thought there was too much fragrance in the gel; and (5) the gel manufacturer "kind of [blew] it off." (Doc. 107-1.) Defendant also attaches a letter written by Lisa Thomas, in which she states, in relevant part, that Crawford told her that that she had been burned "due to faulty gel from one of her vendors." (*Id*. at 10.) The letter states that Crawford "found that they were putting [too] much fragrance in the gel, and she also discovered when melting gel down it contained

---

[4] Defendant moves to strike Plaintiff's Motions in Limine Nos. 2 and 4 and Plaintiff's *Daubert* Motions on the grounds that Plaintiff failed to comply with LRCiv 7.2(l), which requires counsel to certify that it conferred or attempted to confer with the opposing party to resolve disputed evidentiary issues. Defendants' request to strike the Motions will be denied because Plaintiff's counsel included a LRCiv 7.2(l) certification in each Motion. (*See* Docs. 92, 94, 96, 98.)
[5] Plaintiff and Empressive Candles, LLC entered into a confidential settlement agreement on or about December 21, 2021. (Doc. 74.)

1   pieces of plastic in gel that she had to pick out by hand." (*Id*.) The letter states that
2   Crawford "used the gel in the candles, knowing it was faulty." (*Id*.) Defendant avers that
3   this evidence supports the assertion that VCS could be at fault for the candle fire. (Doc.
4   107.)

5          Based on the foregoing, the Court is not persuaded by Plaintiff's argument that
6   Defendant has not identified evidence that VCS could be partially or wholly at fault. Lisa
7   Thomas's deposition testimony and written statement provide at least some evidence that
8   the gel supplied by VCS could have caused the fire. (Doc. 107-1.)

9          The Court disagrees with Plaintiff's assertion that it was "determined that the gel
10  was not a cause of the fire" and rejects this argument as a reason to preclude Defendant
11  from suggesting that VCS is at fault. (Doc. 96.) A federal court sitting in diversity applies
12  the forum state's rules of issue preclusion. *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063,
13  1066 (9th Cir. 1994). Under Arizona law, an issue is "actually litigated" when it "is
14  properly raised by the pleadings or otherwise, and is submitted for determination, and is
15  determined." *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986). For
16  purposes of issue preclusion, "nothing is adjudicated between parties to a stipulated
17  dismissal." *Id.*; *Faulkner v. Wausau Bus. Ins. Co.*, No. CV-10-1064-PHX-ROS, 2011 WL
18  13092025, at *3 (D. Ariz. June 1, 2011) ("The Arizona Supreme Court does not apply
19  issue preclusion when the issue was resolved by way of stipulation.")

20         Plaintiff cites only to its Stipulation to Dismiss Virginia Candle Supply, LLC
21  (Doc. 41) in support of his assertion that VCS's lack of fault has been determined. (Doc.
22  96.) However, the Stipulation does not constitute an adjudication of the issue. Therefore,
23  the Court will not preclude Defendant from arguing that VCS is at fault on the basis of
24  the Stipulation (Doc. 41). Accordingly, Plaintiff's Motion in Limine No. 2 is denied.

25  **IV.    Plaintiff's Motion in Limine No. 4 (Doc. 98)**

26         Plaintiff's Motion in Limine No. 4 requests that the Court preclude Defendant
27  from alleging that Plaintiff is at fault. (Doc. 98.) Plaintiff states that he believes
28  Defendant will assert that Plaintiff is partially at fault based on its Second Supplemental

Disclosure Statement, which states: "Plaintiff's injuries were foreseeable and an expected result of his actions in picking up the subject candle . . . after being told by his mother not to touch it." (*Id.*) Plaintiff, citing *Jimenez v. Sears, Roebuck and Co.*, 904 P.2d 861, 864-65 (Ariz. 1995), argues that under Arizona law, Plaintiff had no duty to look for or guard against the defect in the candle. *Id.* In response, Defendant asserts that it intends to argue not that Plaintiff had a duty to guard against an information defect, but rather that he "assumed the risk of injury by knowingly picking up a burning candle with his bare hands" when the candle had two-foot-high flames and his mother had warned him not to touch it. (Doc. 108.)

Under Arizona law, assumption of risk is an affirmative defense to a strict products liability claim. *Jimenez*, 904 P.2d at 864. In *Jimenez*, the Court explained that "a plaintiff who voluntarily and unreasonably encounters a known danger has assumed the risk and cannot recover on a strict liability claim." *Id.* The Court further explained that unlike assumption of risk, a plaintiff's contributory negligence is not a defense to strict liability because "no duty rests upon the ultimate consumer or user to search for or guard against the possibility of product defects." *Id.* The Court distinguished a plaintiff's contributory negligence and assumption of risk as follows:

> (1) Failure to discover a defect in the product which the plaintiff should, if he was reasonably diligent, have discovered is contributory negligence; (2) notwithstanding the discovery of such a defect, if the plaintiff nevertheless uses the article it is assumption of risk.

*Id.* (internal quotations and brackets deleted). Thus, in a strict products liability claim, "the plaintiff's conduct is relevant to the defenses of assumption of the risk." *United States Aviation Underwriters, Inc. v. Aerospatiale, Societe Nationale Industrielle, S.A.*, No. CIV 02-0824-PHX-EHC, 2005 WL 8161454, at *2 (D. Ariz. Nov. 1, 2005).

Here, Defendant avers that it intends to argue the affirmative defense of assumption of risk. It will be up to the trier of fact to determine whether the elements of that offense have been met. Plaintiff's conduct, or fault, is relevant to Defendant's task of proving Plaintiff voluntarily and unreasonably encountered a known danger. Defendant

1  indicates it does not intend to use Plaintiff's conduct to further an irrelevant contributory

2  negligence defense. Specifically, Defendant states that it will not argue that Plaintiff had

3  a duty to guard against an information defect. Because Plaintiff's conduct is relevant to

4  proving an assumption of risk defense, Plaintiff's Motion in Limine No. 4 (Doc. 98) will

5  be denied.

6  **V.    Plaintiff's *Daubert* Motion Regarding Rob Harrington, PhD (Doc. 92)**

7          Plaintiff moves to preclude Defendant from offering testimony or reports from

8  Rob Harrington, PhD. (Doc. 92.) Defendant seeks to introduce a report by Dr. Harrington

9  that reviews the testing and data contained in Komm's Report. Plaintiff contends that Dr.

10  Harrington's Report and testimony should be excluded because (1) Dr. Harrington's

11  Report is not a product of Dr. Harrington's own testing; (2) Dr. Harrington's

12  qualifications are lacking; (3) Dr. Harrington's Report is not the result of the reliable

13  application of valid principles and methods; (4) Dr. Harrington's Report and testimony

14  will not help the jury understand a fact in issue; (5) the probative value of Dr.

15  Harrington's Report is substantially outweighed by the danger of unfair prejudice,

16  confusing the issues, misleading the jury, and wasting time; and (6) Defendant did not

17  disclose a list of all other cases in which Dr. Harrington testified in the last four years, as

18  required by Rule 26(a)(2)(B). (*Id.*)

19         Defendant contends that (1) Dr. Harrington's qualifications are sufficient; (2) the

20  Report was disclosed correctly; (3) Dr. Harrington was permitted to rely on Komm's

21  expert test results without doing his own testing; and (4) Dr. Harrington's opinions are

22  more probative to the question of what caused the candle's flashover than prejudicial.

23  (Doc. 109.)

24         In diversity cases, Federal Rule of Evidence 702 governs the admissibility of

25  expert testimony. *See Daubert*, 509 U.S. 579 (1993); *see also Primiano v. Cook*, 598 F.3d

26  558, 563 (9th Cir.2010) (in diversity cases, Federal Rule of Evidence 702 controls the

27  admissibility of an expert's opinion). Rule 702 provides that an expert witness must be

28  qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Furthermore, a qualified expert may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A Rule 702 inquiry must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595; *see also Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). A trial court's finding that an expert's testimony is reliable "does not necessarily mean that contradictory expert testimony is unreliable." Fed. R. Evid. 702, Advisory Committee Notes (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

"Unlike an ordinary witness…an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Id.* at 592; *see* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of or* personally observed.") (emphasis added). Rule 703 likens an expert's ability to offer opinions without firsthand knowledge to how a physician bases her diagnosis on numerous sources, including reports from other medical professionals, hospital records, and X rays. Fed. R. Evid. 703, Advisory Committee Notes (1972). The Ninth Circuit demonstrated these principles in *Sementilli v. Trinidad Corp.*, 155 F.3d 1130 (9th Cir. 1998).

In *Sementilli*, the Ninth Circuit considered whether a trial court abused its discretion by excluding the opinion of Dr. Ketchum, a physician expert, on the basis that Dr. Ketchum (1) never personally examined the plaintiff, (2) was not present at the scene of the plaintiff's slip and fall, and (3) was not privy to the plaintiff's thought process

1   before the accident. *Id.* at 1133-34. Dr. Ketchum based his opinions on a review of the
2   plaintiff's medical records, which the plaintiff's treating physician maintained. *Id.* at
3   1133. Based on his review, Dr. Ketchum opined that the plaintiff's preexisting disabilities
4   should have caused his treating physician to disqualify him from sea duty and possibly
5   contributed to his slip and fall. *Id.* The Ninth Circuit held that Rule 703 of the Federal
6   Rules of Evidence permitted Dr. Ketchum to base his opinion on the plaintiff's medical
7   records and his own knowledge, experience, training, and education. *Id.* at 1134.
8   Therefore, the district court abused its discretion by excluding Dr. Ketchum's testimony
9   based on his lack of firsthand knowledge or personal observation. *Id.*; *see also In re Bard*
10  *IVC Filters Products Liab. Litig.,* MDL 15-02641-PHX-DGC, 2017 WL 6554163, at *2
11  (D. Ariz. Dec. 22, 2017) (permitting expert testimony based on the opinions of other
12  experts and rejecting defendant's argument that expert opinions must be excluded where
13  they "cite, refer to, or even rely on the opinions of other experts in this litigation").

14          Here, Dr. Harrington is qualified as an expert under Rule 702 by his "knowledge,
15  skill, experience, training, or education." Fed. R. Evid. 702. Dr. Harrington has an
16  extensive educational and professional background in candle toxicology, safety, and
17  governmental regulation. (Doc. 92-1 at 12.) Dr. Harrington holds a doctorate in
18  Toxicology and is board certified as a Diplomate of the American Board of Toxicology.
19  (*Id.* at 14.) For twelve years, Dr. Harrington reviewed fire safety data and consumer
20  incidents as the Director of Regulatory Affairs and Safety for a large candle
21  manufacturer. (*Id.* at 15.) Additionally, Dr. Harrington has been a member of the National
22  Candle Association for twenty years and currently serves in a role addressing candle
23  safety and health issues. (*Id.*) Dr. Harrington is also a member of the American Society
24  for Testing and Materials ("ASTM") committee that develops candle safety standards.
25  (*Id.*) Of note, Dr. Harrington participated in the development of ASTM F2417, "Standard
26  Specification for Fire Safety for Candles," (Doc. 92-1 at 10) to which Plaintiff's expert
27  refers (*see, e.g.*, Doc. 92-2 at 28). Accordingly, Dr. Harrington is qualified as an expert
28  witness under Rule 702. The Court will now consider whether Dr. Harrington's testimony

satisfies Rule 702(a)-(d).

An expert satisfies Rule 702(a) when their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Dr. Harrington's Report reviews "each of the major candle tests" conducted by Komm to determine if the testing supported Komm's suggested conclusions, including that the candle's flashover was caused by the concentration of fragrance, use of a lower flash point fragrance, and improper mixing. (*Id.* at 1, 10-11.) Dr. Harrington acknowledges that the testing "does not rule out that the flashover may have resulted from one or more of these possibilities." (*Id.* at 10-11.) However, based on his review, Dr. Harrington concludes that "the data presented does not adequately support any one or a combination of these conclusions and other factors may have played a role in this event." (*Id.* at 11). Based on his scientific and technical knowledge, Dr. Harrington provides a different perspective about the inferences a trier of fact may draw from Komm's testing and data. Thus, Dr. Harrington's Report and testimony will help the trier of fact weigh the evidence produced by Komm's testing and determine whether the fragrance or other factors were substantial causes of the candle's flashover. Therefore, the Court finds that Dr. Harrington's testimony satisfies Rule 702(a).

To satisfy Rule 702(b), an expert's testimony must be "based on sufficient facts or data." Fed. R. Evid. 702(b). Magistrate Judge Aguilera's Report and Recommendation found that "Komm's proposed testimony is based on sufficient facts and data" to satisfy Rule 702(b). (*See* Doc. 80 at 7.) The Court adopted the Report and Recommendation, and Plaintiff did not object. (Doc. 84.) Because Dr. Harrington bases his Report on Komm's Report, the Court also finds that Dr. Harrington's proposed testimony is based on sufficient facts and data to satisfy Rule 702(b).

Next, Dr. Harrington reliably applied scientifically valid principles to the facts of this case and the data produced by Komm to satisfy Rule 702(c) and (d). As *Daubert* directs, the Court's inquiry focuses solely on the principles and methodology used by the

experts and not on the conclusions they generate. *Daubert*, 509 U.S. at 595. Like the physician in *Sementilli*, who based his opinions on the plaintiff's medical records without personally examining the plaintiff, Dr. Harrington permissibly based his opinions on the evidence in Komm's Report and his own knowledge, experience, training, and education. Thus, Plaintiff's arguments that the Court should exclude Dr. Harrington's testimony because his Report "is not a product of Dr. Harrington's own testing" and "does not rely on any findings or observations of his own" are not persuasive. (Doc. 92 at 1-2.)

Nor is Plaintiff's argument persuasive that the probative value of Dr. Harrington's Report is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. To the contrary, Dr. Harrington's Report is based on pertinent evidence and scientifically valid principles that will help the jury determine the cause of the candle's flashover. The Court finds that Dr. Harrington's testimony satisfies Federal Rule of Evidence 702.

Finally, the Court considers Plaintiff's argument that Dr. Harrington should be excluded because his disclosure report did not include a list of prior testimony as required by Federal Rule of Civil Procedure 26(a)(2)(B)(v). (Doc. 92 at 6.) An expert's disclosure report must contain "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). A party that fails to provide information required by Rule 26(a) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). District courts are given "particularly wide latitude" to issue sanctions under Rule 37(c)(1). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c) "has been described as a 'self-executing, automatic sanction to provide a strong inducement for disclosure of material.'" *Hoffman v. Constr. Protective Services, Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (quoting *Yeti*, 259 F.3d at 1106).

"[T]he burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107. A court may consider the following factors in determining whether a

discovery violation is justified or harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010).

Courts within the Ninth Circuit have excluded experts due to their failure to include a list of prior testimony as required by Rule 26(a)(2)(B)(v). In *Elgas v. Colorado Belle Corp.*, the court struck the designation of an expert for failure to list other cases in which he had testified as an expert within the preceding four years. 179 F.R.D. 296, 300 (D. Nev. 1998). In striking the designation, the court emphasized that "the disclosure of prior recorded testimony is designed to give the other party access to useful information to meet the proposed experts' opinions." *Id.* at 300. Similarly, in *Scharf v. Trabucco*, the defendants argued that the plaintiffs could not rely on an expert because he failed to provide a list of cases as required by Rule 26(a)(2)(B)(v). No. 3:14-cv-8183-HRH, 2016 WL 1084748, at *4 (D. Ariz. Mar. 21, 2016). The court stressed that "[a]n expert's testimony may be excluded for failure to comply with the case list disclosure requirement in Rule 26(a)(2)(B)(v)." *Id.* The court instructed the expert to produce a case list within 30 days or face exclusion. *Id.; see also Vaughn v. Teran*, No. 1:17-cv-00966-DAD-JLT, 2019 WL 7282049, at *9 (E.D. Cal. Dec. 27, 2019) (compelling defendants to produce a list of prior testimony as required by Rule 26(a)(2)(B)(v)).

Here, as an initial matter, the Court rejects Defendant's argument that Dr. Harrington's testimony should be permitted because Federal Rule of Civil Procedure 26(a)(2)(B)(v) is not a basis for preclusion of expert testimony under the *Daubert* and Federal Rule of Evidence 702 standards. (Doc. 109 at 3.) As detailed above, exclusion is an appropriate sanction if an expert fails to fulfill the disclosure requirements of Rule 26(a) of the Federal Rules of Civil Procedure. *Yeti*, 259 F.3d at 1106.

Next, the Court observes that it is unclear whether Dr. Harrington complied with Rule 26(a)(2)(B)(v) by including a list of prior testimony. Defendant never confirms that

1   Dr. Harrington provided such a list. In response to Plaintiff's specific claim that Dr.

2   Harrington failed to provide a list of prior testimony, Defendant merely states that "Mr.

3   Harrington's report, CV, and qualifications statement" were timely disclosed in

4   Defendant's First Supplemental Disclosure. (Doc. 109 at 3.) The disclosure statements

5   Plaintiff attached to his Motion do not indicate that Dr. Harrington included a list of prior

6   testimony. (Docs. 92-3, 92-4.)

7       Because it does not appear that Dr. Harrington produced a list of cases in

8   compliance with Rule 26(a)(2)(B)(v), the Court will order Defendant to either (1)

9   produce a list of Dr. Harrington's prior testimony in compliance with Rule

10  26(a)(2)(B)(v), or (2) show why its failure to produce such a list was substantially

11  justified or is harmless.

12  **VI.    Plaintiff's *Daubert* Motion Regarding Kelly Wouters, PhD (Doc. 94)**

13      Plaintiff moves to preclude Defendant from offering testimony or reports from

14  Kelly Wouters, PhD. (Doc. 94 at 1.) Plaintiff argues that Defendant should have

15  disclosed Dr. Wouters as an expert witness, not a fact witness, because his Report relies

16  on technical and specialized testing procedures within the scope of Rule 702. (*Id.*) In

17  response, Defendant states that it intends to present Dr. Wouters as a fact witness to

18  testify solely to the fact that no volatile compounds were detected in the subject candle.

19  (Doc. 110 at 1.) Defendant asserts it does not intend to have Dr. Wouters testify to any

20  laboratory testing processes. (*Id.* at 2.) Defendant asks that, if the Court determines that

21  Dr. Wouters cannot testify to that sole issue, Defendant be permitted to introduce the

22  Report to Plaintiff's expert for his opinion on whether volatile compounds were detected.

23  (*Id.* at 2.)

24      Rule 701(c) of the Federal Rules of Evidence limits lay witness testimony to

25  opinions "not based on scientific, technical, or other specialized knowledge within the

26  scope of Rule 702." Fed. R. Evid. 701(c). The Rule "makes clear that any part of a

27  witness' testimony that is based upon scientific, technical, or other specialized knowledge

28  within the scope of Rule 702 is governed by the standards of Rule 702 and the

1  corresponding disclosure requirements." Fed. R. Evid. 701, Advisory Committee Notes
2  (2000).

3         Defendant avers that Dr. Wouters will testify solely to the fact in his Report that
4  "[n]o alcohols, mineral spirits, or other volatile components [we]re detected" in the
5  candle samples. (Doc. 110 at 1; Doc. 94-1 at 1.) Dr. Wouters' Report describes the
6  methods of analysis the laboratory used to arrive at this finding:

7         The evidence was examined in accordance with ASTM Methods E1386 and
       E1618.[6] Recovery of ignitable liquids is by solvent extraction with analysis
8      by high-resolution capillary column Gas Chromatography-Flame Ionization
       (GC-FID) and Gas Chromatography/Mass Spectrometry (GC/MS) with
9      computer comparison to the EPA/NIST Database.

10 (Doc. 94-1 at 1.) These methods are scientific and technical and, therefore, place Dr.
11 Wouters' findings within the scope of expert testimony. Defendant's assertion that Dr.
12 Wouters will not testify to testing processes does not resolve the problem that his opinion
13 is impermissibly based on scientific expertise well beyond the scope of a layperson's
14 observations.

15        Because Dr. Wouters' testimony is based on specialized knowledge, Defendant
16 should have disclosed him as an expert witness under the standards of Rule 702 and the
17 corresponding disclosure requirements. However, Defendant did not do so and
18 acknowledges as much. (*See* Doc. 110 at 1) ("Dr. Wouters has not been identified as an
19 expert by Candlewic or any other party…Candlewic does not intend to offer Dr. Wouters
20 as an expert witness."); (Doc. 121 at 5) (Defendant explaining "we're not offering [Dr.
21 Wouters] as an expert. We did not disclose him.") Therefore, the Court will preclude Dr.
22 Wouters from offering any testimony and grant Plaintiff's *Daubert* Motion regarding
23 Kelly Wouters, PhD (Doc. 94). Pursuant to Fed. R. Evid. 702 and 703, Defendant may
24 seek to introduce the Report to Plaintiff's expert and ask for his opinions regarding the
25 Report, subject to the Court's resolution of any objections by Plaintiff.

26 [6] ASTM Method E1386 provides a "Standard Practice for Separation of Ignitable Liquid
   Residues from Fire Debris Samples by Solvent Extraction." ASTM,
27 https://www.astm.org/e1386-15.html (last visited May 16, 2023). Method E1618 is a
   "Standard Test Method for Ignitable Liquid Residues in Extracts from Fire Debris
28 Samples by Gas Chromatography-Mass Spectrometry." ASTM,
   https://www.astm.org/e1618-19.html (last visited May 16, 2023).

**IT IS ORDERED**:

(1)  Defendant's Motion in Limine No. 1 (Doc. 91) is **denied**.

(2) Plaintiff's Motion in Limine No. 2 (Doc. 96) is **denied**.

(3) Plaintiff's Motion in Limine No. 4 (Doc. 98) is **denied**.

(4) Within **fourteen (14) days** of the date this Order is filed, Defendant shall either (1) produce a list of Dr. Harrington's prior testimony in compliance with Federal Rule of Civil Procedure 26(a)(2)(B)(v), or (2) show why its failure to produce such a list was substantially justified or is harmless. Plaintiff's *Daubert* Motion Regarding Rob Harrington, PhD (Doc. 92) is taken under advisement pending the supplemental briefing.

(5) Plaintiff's *Daubert* Motion Regarding Kelly Wouters, PhD (Doc. 94) is **granted**.

Dated this 2nd day of August, 2023.

Honorable Rosemary Márquez
United States District Judge