**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnathon Cross,<br><br>              Plaintiff,<br><br>v.<br><br>Candlewic,<br><br>              Defendant. | No. CV-20-00423-TUC-RM (MSA)<br><br>**ORDER** |

This case, removed to federal court based on diversity jurisdiction, arises from injuries sustained by Plaintiff Johnathon Cross when a candle made with fragrance sold by Defendant Candlewic ("Defendant") became engulfed in flames. (Docs. 1, 39.)[1] A jury returned a verdict in favor of Plaintiff on his strict liability claim. (Doc. 153.) The jury found Plaintiff's total damages to be $1 million and apportioned fault to Defendant (75%), Plaintiff (5%), and non-party Empressive Candles (20%). (Doc. 161.) Presently pending before the Court is Defendant's Motion for a New Trial (Doc. 168), to which Plaintiff responded in opposition (Doc. 176), and Defendant replied (Doc. 177). For the following reasons, the Court will deny the Motion.[2]

In its Motion for a New Trial, Defendant contends that it is entitled to a new trial or a reduced verdict of no more than $150,000 because the $1 million verdict is excessive and not supported by the evidence. (Doc. 168.) Defendant asserts that it brings its Motion

---

[1] As the parties are familiar with the facts of this case, the Court discusses only those facts pertinent to the pending Motion.
[2] The Court finds the Motion suitable for decision without oral argument.

pursuant to Rule 59 of both the Federal and Arizona Rules of Civil Procedure.  (*Id.*)[3] Defendant's Motion focuses on the evidence presented by Plaintiff—or lack thereof—to establish the nature and extent of his pain and suffering and economic damages.  (*Id.*) Regarding physical injuries, Defendant acknowledges that Plaintiff sustained some hand injuries.  (*Id.* at 9.)[4]  However, Defendant contends that the $1 million verdict is excessive because there is no evidence that Plaintiff suffered a "quantifiable disability."  (*Id.* at 12.) Moreover, Defendant claims that Plaintiff could not have established the amount of damages attributable to his physical injuries with any reasonable certainty because Plaintiff did not introduce testimony from his treating providers, and apart from two unhelpful discharge notes, Plaintiff did not introduce "any medical records" from the burn clinic documenting his treatment, recovery, or prognosis.  (*Id.* at 2, 3.)[5]

With respect to economic damages, Defendant contends that Plaintiff did not introduce any medical bills or evidence showing lost wages, a need for future medical expenses, or other economic damage.  (*Id.* at 3, 7, 12.)  Additionally, Defendant asserts that Plaintiff did not substantiate the claim that Plaintiff is expected to live until 67 years old, as Plaintiff's counsel suggested to the jury while explaining one method to calculate damages.  (*Id.* at 9.)  Due to the lack of evidence regarding Plaintiff's pain, suffering, and economic damages, Defendant claims that the jury impermissibly based its verdict on conjecture or speculation.  (*Id.* at 11.)  Furthermore, Defendant argues that the verdict is excessive compared to prior civil verdicts.  (*Id.* at 12.)

Plaintiff responded in opposition, arguing that the Motion should be denied because the verdict is supported by the evidence and should be given "substantial deference." (Doc. 176.)  As an initial matter, Plaintiff asserts that federal, not state, procedural rules govern the request for a new trial as this case was removed from state court based on diversity

---

[3] For example, Defendant initially states that its request for a new trial is "pursuant to Rule 59, Federal Rules of Civil Procedure." (Doc. 168 at 1.)  But later, Defendant asserts that it is "entitled to a new trial pursuant to Rule 59(a)(1)(G), ARCP" and that the Court can "amend a judgment pursuant to Rule 59(d), ARCP." (*Id.* at 10.)
[4] All record citations refer to the page numbers generated by the Court's electronic filing system.
[5] Defendant notes that it introduced several clinic notes from the burn clinic. (Doc. 168 at 3; Doc. 168-2 at 108-114.)

jurisdiction. (*Id.* at 2.) Next, Plaintiff claims that his testimony and that of his hand surgery expert describing his significant, and in some cases permanent, injuries provided substantial evidence supporting the damages award. (*Id.* at 5-14.) Plaintiff asserts that since Defendant introduced nothing contradicting this testimony, the jury's award was consistent with the evidence presented. (*Id.* at 14-15.) Additionally, Plaintiff states that the jury's decision to reduce the verdict by 5% to account for Plaintiff's negligence evinces the jury's reasonableness. (*Id.* at 15.) Finally, Plaintiff highlights that when adjusted for inflation, a verdict Defendant cites is consistent with the damages in this case. (*Id.*)

In reply, Defendant insists that it is entitled to a new trial based on federal and state procedural rules. (Doc. 177.) Defendant highlights Plaintiff's testimony that he returned to full-time work six weeks after his injury and that he can work on small engines in his current job. (*Id.* at 3.) Defendant also emphasizes Dr. Lipton's testimony that Plaintiff's left hand and thigh are resolved with no permanent injuries, and Plaintiff's right hand, which required the skin graft, has full mobility and range of motion. (*Id.* at 4.) Additionally, Defendant points out that Dr. Lipton has not examined Plaintiff since May 2021. (*Id.*)

**I.      Legal Standard**

When reviewing a jury's award of compensatory damages in a diversity action, "the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989) (regarding punitive damages); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 435 n. 18 (1996) (applying reasoning from *Browning* to compensatory damages).

Under Rule 59 of the Federal Rules of Civil Procedure, a trial court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). These reasons include that the verdict is excessive and "contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*,

481 F.3d 724, 729 (9th Cir. 2007) (internal quotations omitted). If the court determines that the verdict is excessive, it may grant the defendant's motion for a new trial or allow the defendant to accept a reduced amount of damages set by the court. *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983). In assessing the motion, the court should bear in mind that the Ninth Circuit gives "substantial deference to a jury's finding of the appropriate amount of damages." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

In a diversity case, the federal court determines whether a jury award is excessive by applying state law. *Browning-Ferris Industries of Vermont, Inc.*, 492 U.S. at 279; *Gasperini*, 518 U.S. at 426-39. Under Arizona law, a damages award is excessive, warranting a new trial only if it is "so unreasonable that it shocks the conscience of the court." *Sheppard v. Crow-Barker Paul No. 1 Ltd. Partn.*, 968 P.2d 612, 622 (Ariz. App. 1st Div. 1998) (internal quotations omitted). When the verdict is not "shockingly outrageous, but instead reflects an exaggerated measurement of damages, the trial court may exercise its discretion to order remittitur." *Soto v. Sacco*, 398 P.3d 90, 94 (Ariz. 2017) (internal quotations omitted).

In a personal injury action under Arizona law, "the plaintiff is seeking a *lump sum* figure to compensate him for the injuries suffered." *Bruce Church, Inc. v. Pontecorvo*, 603 P.2d 932, 935 (Ariz. App. 1st Div. 1979) (emphasis added). To ascertain the total figure that would compensate the plaintiff, the jury is "allowed to consider certain elements such as loss of earnings, loss of future earnings based upon loss of earning capacity, pain and suffering, medical expenses related to the injury, and future medical expenses." *Id.* But because many of these expenses are "not capable of precise ascertainment," "the law does not fix precise rules for the measure of damages but leaves their ascertainment to a jury's good sense and unbiased judgment." *Id.* (internal quotations).

II.     **Discussion**

The jury heard the following evidence relevant to the damages award in this case:

Plaintiff testified that on Thanksgiving Day in 2019, his screaming mother alerted

him to a candle that had become engulfed in flames inside their apartment. (Doc. 168-1 at 8-9.) Plaintiff suffered third-degree burns on his right hand when gel from the candle "boiled over" onto his hands. (*Id.* at 10, 20.) Plaintiff described this pain as "the most intense, severe pain that [he has] felt in [his] entire life." (*Id.* at 11.) Plaintiff had to undergo a skin graft where healthy skin was taken from his thigh to help repair the severely damaged skin on his right hand, and he endured months of painful bandage changes and blister draining. (*Id.* at 28, 31-33.) During Plaintiff's recovery, he required assistance from others with activities of daily living, including using the bathroom and showering, which Plaintiff described as embarrassing and humiliating. (*Id.* at 37-38.) Plaintiff's injuries made it challenging to reenter the workforce, and he continues to experience pain and limitations. (*Id.* at 45-47, 50.) For example, Plaintiff has had to learn to drive with a wheel knob for his left hand because his right hand is too sensitive to sunlight, and it's difficult for Plaintiff to enjoy some of his old hobbies and activities he enjoyed with his son. (*Id.* at 50-56.)

The jury also heard testimony from Dr. Mitchel Lipton, Plaintiff's hand surgery expert, who examined him in May 2021. (Doc. 168-2.) Dr. Lipton testified that although Plaintiff's right hand had minimal loss of range of motion and full mobility, it nonetheless had permanent nerve damage, reduced strength, and "intrinsic tightness"[6] caused by the burns. (*Id.* at 36-37, 42, 55.) Dr. Lipton further testified that Plaintiff's scarring—which many people find grotesque and Plaintiff's co-workers mock— was likely to continue for the foreseeable future. (*Id.* at 45-46.)

Considering all of Plaintiff's injuries, the Court finds that the $1 million verdict falls "within the range of credible evidence." *See Flieger v. Reeb*, 583 P.2d 1351, 1353 (Ariz. App. 2d Div. 1978) (a jury verdict does not warrant a new trial if it is "within the range of credible evidence"). Plaintiff sustained significant physical injuries, resulting in the permanent disfigurement of his hand and ongoing physical pain, limitations, and mental suffering. *See Leavey v. UNUM/Provident Corp.*, No. CV-02-2281-PHX-SMM, 2006 WL

---

[6] Dr. Lipton explained that "intrinsic tightness" occurs when the muscles in the hand are "tight and contracted," making it difficult to close the hand into a fist. (Doc. 168-2 at 37.)

- 5 -

1515999, at *11 (D. Ariz. May 26, 2006) (remitting $4 million verdict, concluding $1.2 million was appropriate to compensate plaintiff's "slight" physical injury, drug relapse, and mental and emotional distress caused by worrying about his financial security). The jury's deliberativeness is also evidenced by its decision to attribute 5% of the fault to Plaintiff's own actions and the Court's instructions[7] on compensatory damages. *Ahmad v. State*, 432 P.3d 932, 935 (Ariz. App. 1st Div. 2018) (holding that the trial court abused its discretion by reducing damages in wrongful death action, finding $30 million award, combined with attribution of 5% fault to State and the court's jury instructions, suggested that the jury's verdict was the result of temperate deliberativeness).

Contrary to Plaintiff's assertions, there is no indication that the jury based their decision on "speculation, guesswork or conjecture." Instead, it appears that the jury's decision was based on Plaintiff's detailed testimony of his pain and suffering, the expert testimony regarding the injuries he sustained, and Defendant's decision not to offer a rebuttal expert. Furthermore, Plaintiff was not required to produce a precise breakdown of each possible basis for damages. *See Bruce Church, Inc.*, 603 P.2d at 935 ("the law does not fix precise rules for the measure of damages but leaves their ascertainment to a jury's good sense and unbiased judgment") (internal quotations omitted). Nor, as Defendant suggests, was the jury limited by Plaintiff's counsel's suggestion of the value of damages, "particularly given the jury's consideration of damages for pain, discomfort, suffering, disability, and disfigurement." *Dillon v. Pitt*, No. 1 CA-CV 22-0744, 2023 WL 7138932, at *3 (Ariz. App. 1st Div. Oct. 31, 2023).

The Court acknowledges that the sum awarded by the jury in this case is higher than the amounts awarded in cases cited by Defendant. Courts may consider other verdicts when assessing a motion for a new trial based on an excessive verdict. *Soto*, 398 P.3d at 98. However, the Arizona Supreme Court has cautioned that comparing other verdicts "is only marginally relevant" to the court's analysis and that courts "should not treat other

---

[7] The Court instructed the jury in accordance with the Ninth Circuit model jury instructions that the jury should consider the "nature and extent" of Plaintiff's injuries, Plaintiff's "disfigurement and loss of enjoyment of life," and Plaintiff's "mental, physical, and emotional pain and suffering." (Doc. 158 at 18.)

damage awards as conclusive in assessing whether the jury made a just award." *Id.* Thus, "the fact that the jury could have awarded less and that in many, if not most, instances juries have awarded less does not necessarily dictate the propriety of a remittitur." *Velez v. Roche*, 335 F. Supp. 2d 1022, 1041 (N.D. Cal. 2004).

In this case, because the verdict was not "contrary to the clear weight of the evidence," *Molski*, 481 F.3d at 729, or "so unreasonable that it shocks the conscience of the court," *Sheppard*, 968 P.2d at 622, Defendant's request for a new trial or a reduced judgment will be denied.

**IT IS ORDERED** that Defendant's Motion for New Trial (Doc. 168) is **denied**.

Dated this 19th day of September, 2024.

_____
Honorable Rosemary Márquez
United States District Judge